IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                     CRIM. NO.: 22-120 (SCC)

[1] FERNANDO GALLARDO-ÁLVAREZ,

Defendant.

**OPINION AND ORDER**

Defendant Fernando Gallardo-Álvarez' ("Defendant
Gallardo-Álvarez") has moved the Court to review and
revoke the pretrial detention order issued by a U.S.
Magistrate Judge in the captioned case. *See* Docket No. 41. For
the reasons set forth below, the Court DENIES Defendant
Gallardo-Álvarez' request to revoke the pretrial detention
order.

## I.  Background

On March 23, 2022, a grand jury returned an indictment charging Defendant Gallardo-Álvarez with violating 18 U.S.C. § 1349 (conspiracy to commit mail, wire, and bank fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1028A(a)(1) (aggravated identity theft), and 18 U.S.C. § 1956(h) (money laundering conspiracy). *See* Docket No. 3-1.[1] On April 1, 2022, U.S. Magistrate Judge Bruce J. McGiverin held a detention hearing regarding both the instant case and criminal case captioned *United States v. Fernando Gallardo-Álvarez*, 22-cr-121 (PAD) ("Criminal Case 22-cr-121").[2] *See* Docket No. 24.

---

[1] The indictment also charges Olga Rivera-Dávila with violating 18 U.S.C. § 1349 (conspiracy to commit mail, wire and bank fraud), 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1028A(a)(1) (aggravated identity theft), 18 U.S.C. § 1956(h) (money laundering conspiracy), and 18 U.S.C. § 1957 (engaging in transactions in property derived from specified unlawful acts).

[2] In that case, a grand jury returned a twenty-two (22) count indictment charging Defendant Gallardo-Álvarez with violating 18 U.S.C. § 1546(a) (fraud and misuses of visas, permits, and other documents), 18 U.S.C. § 1341 (mail fraud), 42 U.S.C. § 408(a)(7)(B) (misuse of social security number), and 18 U.S.C. § 1028A(a)(1) (aggravated identity theft).

On April 19, 2022, the Magistrate Judge issued an order stating that Defendant Gallardo-Álvarez was to remain in pretrial detention. Citing to 18 U.S.C. § 3142(f)(2)(B), the Magistrate Judge stated there was a serious risk that, "if released [Defendant Gallardo-Álvarez] would obstruct justice or threaten a victim or witness." *See* Docket No. 34 at pg. 3. The Magistrate Judge emphasized that pretrial dentition was necessary because of Defendant Gallardo-Álvarez' extensive prior criminal history and in view of an incident whereby he reportedly threatened to shoot a former client. *Id.* The Magistrate Judge also found that Defendant Gallardo-Álvarez should be detained based on risk of nonappearance and dangerousness. *Id.* at pg. 2.

On May 26, 2022, Defendant Gallardo-Álvarez moved the Court for a *de novo* bail hearing so that we could review the Magistrate Judge's pretrial detention order. *See* Docket No. 41. Accordingly, a *de novo* bail hearing was held on June 6, 2022. Docket Nos. 44 and 50. At the *de novo* bail hearing, the

Government primarily relied on the same arguments advanced in its initial request for pretrial detention, *see* Docket No. 20. However, the Government informed of an additional incident regarding threats allegedly made by Defendant Gallardo-Álvarez to another individual who identified himself as a previous client. To shed light on this incident, the Government called as a witness United States Postal Service Inspector Jorge M. Ríos-Amador ("USPS Inspector Ríos-Amador").

For his part, Defendant Gallardo-Álvarez argued in favor of imposing conditions of release, such as electronic monitoring or home detention. Defendant Gallardo-Álvarez called as a witness his father, Fernando Gallardo-Bustillos ("Mr. Gallardo-Bustillos"), who spoke about his availability to serve as a third-party custodian if his son were released.[3] After listening to the Parties' positions, the Court held the

---

[3] The United States Probation Officer that prepared the Amended Pretrial Services Report, *see* Docket No. 23, was present at the *de novo* bail hearing. Both the Government and defense counsel were able to question him.

matter under advisement and ordered that Defendant Gallardo-Álvarez remain detained pending the Court's evaluation of the information received during the hearing. *See* Docket No. 50.

Having rehearsed this procedural background, the Court turns to Defendant Gallardo-Álvarez' request.

## II. *De Novo* Bail Hearing

### a. Standard of Review

This Court's review of the Magistrate Judge's detention order is *de novo. United States v. Tortora,* 922 F.2d 880, 883 n.4 (1st Cir. 1990).

### b. Pretrial Detention

Pretrial detention is permitted under the Bail Reform Act of 1984 if, after holding a hearing pursuant to 18 U.S.C. § 3142(f), it is found that no condition or combination of conditions exist which could reasonably assure the appearance of the defendant and the safety of an individual

or the community. *See* 18 U.S.C. § 3142(e)(1).[4] Meaning that, as a threshold matter, the Court must first look into whether the Government's request for pretrial detention is supported by one of the statutory subsections under 18 U.S.C. § 3142(f) that provide for pretrial detention. Here, the Government moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(2)(A) (serious risk of flight) and 18 U.S.C. § 3142(f)(2)(B) (serious risk of obstruction of justice or threat to a prospective witness or juror). *See* Docket Nos. 20 at pg. 1 and 45 at pg. 9. The Court considers these grounds for detention in turn.

### i. 18 U.S.C. § 3142(f)(2)(A): Serious Risk of Flight

The Government is tasked with establishing that Defendant Gallardo-Álvarez presents a risk of flight by a

---

[4] If probable cause is found indicating that the defendant committed one of the offenses listed under 18 U.S.C. § 3142(e)(2)-(3), a statutory presumption that pretrial detention is warranted attaches. This, however, is not a presumption case since the offenses for which Defendant Gallardo-Álvarez is charged in the indictment do not fall under those provisions.

preponderance of the evidence. *See Hernández-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (highlighting that "under the Bail Reform Act, where flight risk is a factor, the government need only prove flight risk by a preponderance of the evidence in order to continue detention."). Here, the Government points to, *inter alia*, Defendant Gallardo-Álvarez' potential lengthy incarceration period, financial means to flee, and "disrespect for the law" in support of its argument that Defendant Gallardo-Álvarez is a serious risk of flight. Docket No. 45 at pg. 12. The Court agrees and adds that Defendant Gallardo-Álvarez appears to have strong ties to the state of New York, where he lived for quite some time, and Florida, where he also lived and his sister resides.[5] Additionally, the Amended Pretrial Services Report ("Amended PSR") informs that Defendant Gallardo-Álvarez is potentially connected to the criminal underworld due to his reported friendship with an

---

[5] The Amended PSR states that Defendant Gallardo-Álvarez' passport expired and is currently in the possession of law enforcement agents. Docket No. 23 at pg. 2.

individual with ties to a gang of Dominican nationals. Docket No. 23 at pg. 6.

### ii. 18 U.S.C. § 3142(f)(2)(B): Serious Risk of Obstructing Justice or Intimidating Prospective Witnesses

The Government contends that, if Defendant Gallardo-Álvarez is granted bail and is therefore released pending trial, there is a serious risk that he will obstruct justice or intimidate prospective witnesses. In support of this contention, the Government has proffered two incidents pertaining to individuals that were prior clients of Defendant Gallardo-Álvarez during the time that he rendered immigration related services.

In the first incident, the prior client, identified as TFP, called Defendant Gallardo-Álvarez' to inquire about his immigration related case.[6] This incident reportedly took place

---

[6] This first incident was memorialized by a Homeland Security Investigations Special Agent who interviewed TFP. The ROI memorializing this incident was produced to defense counsel during the *de novo* bail hearing. Per the ROI, Defendant Gallardo-Álvarez represented

in or around 2020. Defendant Gallardo-Álvarez informed TFP that he was in Miami, Florida. But TFP allegedly then saw Defendant Gallardo-Álvarez in Puerto Rico. TFP then went to Defendant Gallardo-Álvarez' home and was received by a female—identified as Gallardo-Álvarez' wife—who informed him that Defendant Gallardo-Álvarez was in Florida. TFP once again called Defendant Gallardo-Álvarez. During that call, Defendant Gallardo-Álvarez allegedly told TFP that if he returned to his home, he would shoot him.

The second incident took place in 2021. *See* Docket No. 48-1. USPS Inspector Ríos-Amador testified that Homeland Security Investigations ("HSI") and the United States Postal Inspection Services ("USPS") are currently conducting victim interviews. During one of those interviews, another prior client of Defendant Gallardo-Álvarez', identified as VM,

himself as a lawyer and assisted TFP in the completion of a petition under the Violence Against Women Act before the United States Citizenship and Immigration Services.

inquired as to his immigration status.[7] Defendant Gallardo-Álvarez then allegedly brandished a black pistol. *Id.*

TFP and VM were both prior clients of Defendant Gallardo-Álvarez during the time that he represented he was an immigration attorney. The Government has stated that TFP is not a witness in this case, but it has identified VM as a "victim." An analysis of both incidents indicates that in any event, TFP could have very well been a prospective witness in Criminal Case 21-cr-121. And VM could potentially serve as a prospective witness in that same case, for both incidents could be linked to Defendant Gallardo-Álvarez' immigration related endeavors and allude to elements of the fraudulent scheme outlined in that criminal case.

---

[7] USPS Inspector Ríos-Amador was one of the law enforcement agents present during the interview related to the second incident. After the *de novo* bail hearing concluded, the Government submitted the ROI memorializing this second incident. *See* Docket No. 48-1. The ROI adds that, when VM encountered Defendant Gallardo-Álvarez and inquired about his immigration file, he brandished his weapon and told him that "A Dominican is worthless" and that he could "solve everything with a phone call." *Id.*

Albeit the differences between the instant criminal case and Criminal Case 22-121, both cases charge Defendant Gallardo-Álvarez with aggravated identity theft and fraudulent conduct. As the First Circuit has noted, the Court may "conclude from defendant's past behavior that there is a serious risk that defendant, if released will attempt to injure or intimidate prospective witnesses." *United States v. Ploof,* 851 F.2d 7, 11 (1st Cir. 1988).[8] In view of the prior conduct displayed by Defendant Gallardo-Álvarez, the Court finds that there is a serious risk that, if released, he may threaten or intimidate victims of the instant case who could potentially be called as witnesses. The behavior displayed by Defendant Gallardo-Álvarez is indicative of a person that reacts violently if questioned about matters related to the charged conduct.

The record further shows that a serious risk exists that Defendant Gallardo-Álvarez will attempt to obstruct justice

---

[8] *See also United States v. Jones,* 201 F.3d 429 (1st Cir. 1999) (unpublished opinion).

and subvert the ongoing judicial proceedings. The Government has proffered, and the testimony of USPS Inspector Ríos-Amador sustains that, when Defendant Gallardo-Álvarez was subpoenaed to appear at a deposition regarding outstanding restitution payments, to avoid service, he denied his identity and stated that he was his brother. While Defendant Gallardo-Álvarez was eventually served, this behavior denotes a clear disregard of the law.  The record also shows that, during his term of supervised release, Defendant Gallardo-Álvarez did not show up to his community service site on various occasions and was repeatedly reprimanded for such behavior. *See* Docket No. 23 at pg. 6. While he ultimately completed his community service obligations, the failure to appear issues recurred. *Id.*

Having determined that the Government established that Defendant Gallardo-Álvarez poses a serious risk of flight by a preponderance of the evidence and that a serious risk exists that Defendant Gallardo-Álvarez will attempt to undermine

the ongoing judicial proceedings and attempt to threaten or intimidate prospective witnesses, the Court next considers the factors set forth in § 3142(g) vis-à-vis the record and the evidence proffered in order to ascertain whether conditions or a combination of conditions exist which "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

### c. Section 3142(g) Factors

#### i. Nature and Circumstances of the Offense Charged

According to the indictment, Defendant Gallardo-Álvarez, along with Olga Rivera-Dávila, conspired to fraudulently receive unemployment benefits from the Unemployment Insurance and other unemployment benefit programs that were created after the passage of the Families First Coronavirus Response Act and the Coronavirus Aid, Relief and Economic Security Act, such as the Pandemic Unemployment Assistance Program, Federal Pandemic

Unemployment Compensation, and Pandemic Emergency Unemployment Compensation. *See* Docket No. 3-1. If found guilty of the charged offenses, Defendant Gallardo-Álvarez would have defrauded federal unemployment benefit programs that were created to assist individuals during a critical time in history, namely, the COVID-19 pandemic, the first global pandemic in over 100 years.

### ii.  Weight of the Evidence

The weight of the evidence against Defendant Gallardo-Álvarez appears to be strong. And as noted by USPS Inspector Ríos-Amador, the USPS along with HSI are conducting victim interviews.

### iii. History    and    Characteristics    of Defendant Gallardo-Álvarez

At the time of his arrest, Defendant Gallardo-Álvarez was forty-seven (47) years old. Docket No. 23 at pg. 2. As far as Defendant Gallardo-Álvarez' educational attainment is concerned, he received his high school diploma in 1992 and while he began a bachelor's degree in accounting, he dropped

out and never completed the same. *Id.* at 3. His employment history is murky. While Defendant Gallardo-Álvarez informed the United States Probation Officer ("USPO") that prepared his Amended PSR that he had been unemployed since February 2021, the Amended PSR also shows that he was employed at Sky High Elevators Cop until January 2022. *Id.* His monthly income at that last job was reported as approximately $3,500.00. *Id.* He further informed the USPO that he rendered immigration advice and prepared tax returns for previous employers. *Id.* He also reported that he dabbled in construction work to make ends meet. *Id.* For his part, Mr. Gallardo-Bustillo informed the USPO that, while he did not know the specifics of his son's line of work, he would best describe him as a "consultant." *Id.*

The record shows that Defendant Gallardo-Álvarez has a prior history of substance abuse (marijuana and cocaine use). *Id.* at pg. 4. However, during his term of supervised release, urinalysis tests were performed which returned negative

results for all tested substances. *Id.* The urinalysis performed on March 24, 2022, when Defendant Gallardo-Álvarez was arrested, returned negative results to all tested substances. *Id.*

During the *de novo* bail hearing, defense counsel proffered that Defendant Gallardo-Álvarez has strong ties to Puerto Rico since he takes care of his mother who is currently in a nursing home in the municipality of Carolina. And although he resided for some time in the state of New York and later in Florida (reportedly in light of Hurricane María), he has spent the majority of his life in Puerto Rico. He has a sister that lives in Miami, Florida, but his brother, other sister and father also reside in Puerto Rico.

Defendant Gallardo-Álvarez' criminal history is extensive. *Id.* at pgs. 5-7. In 2012, after pleading guilty in federal court in Criminal Case 11-cr-304, to violating 18 U.S.C. § 286 (conspiracy to defraud the United States with respect to claims), Defendant Gallardo-Álvarez was sentenced to fifteen (15) months of imprisonment, followed by three (3) years of

supervised release. He was also ordered to complete 300 hours of community service work and restitute the amount of $1,074,359.39.[9] During his term of supervised release, Defendant Gallardo-Álvarez had multiple run-ins with state authorities in connection with domestic violence allegations. The same are memorialized in detail in the Amended PSR and the Court need not rehash the same here. The Court will, however, underscore that they include, *inter alia,* two restraining orders filed by women that were previously romantically involved with Defendant Gallardo-Álvarez and reveal a pattern of stalking and threatening behavior towards them.

Defendant Gallardo-Álvarez' criminal history also reflects that he faced a weapons violation charge for allegedly

---

[9] To date, Defendant Gallardo-Álvarez has failed to comply with his restitution obligations. The record shows that attempts have been made by the Government to collect this money. During the *de novo* bail hearing, Mr. Gallardo-Bustillos stated that he was unaware that his son owed over a $1,000,000.00 in restitution payments.

brandishing a weapon in front one of the women that had filed one of the restraining orders against him, but this case did not prosper in state court.[10] While it is true that his term of supervised release was never revoked, the record confirms that a preliminary revocation hearing was held during this time.[11] The same resulted in a finding of probable cause and was referred to the presiding judge in Criminal Case 11-cr-304 for a final revocation hearing. The presiding judge ultimately did not revoke his term of supervised release but modified his conditions of release to accommodate the diversionary program that the state court ordered Defendant Gallardo-Álvarez to complete upon having violated one of the restraining orders.

---

[10] The record shows that in 2007, Defendant Gallardo-Álvarez was granted a firearms license but the same currently appears as "revoked." Docket No. 23 at pg. 7.

[11] The record also shows a motion informing bail violations and requesting an arrest warrant in Criminal Case 11-cr-304 at Docket No. 69. A bond revocation hearing was held, but the Magistrate Judge solely admonished Defendant Gallardo-Álvarez and allowed him to remain on bond.

### iv. Danger Posed to the Community if Defendant Gallardo-Álvarez is Released

Defendant Gallardo-Álvarez' extensive criminal history shows that if released, he would be a danger to the community. While Defendant Gallardo-Álvarez' prior criminal conduct at the state level did not result in any convictions, his conduct established a pattern of cyberstalking women whom he was previously romantically involved with. Moreover, the threats made to his two prior clients, including the alleged brandishing of a weapon during a time in which his firearms license was revoked, support this proposition. Further, while Defendant Gallardo-Álvarez completed his term of supervised release in 2017, the indictment in Criminal Case 22-cr-121 states that the timeline of the conspiracy and fraudulent scheme outlined therein began at some point in 2017. That is, Defendant Gallardo-Álvarez resumed his criminal activities towards the end of his term of supervised release or shortly after having completed the same. And while

the offenses charged in both the instant case and Criminal Case 22-cr-121 may not fall under the "violent crimes" umbrella, they are still offenses that put individuals, their identities, and their financial wellbeing, at risk.

### d. Analysis

The totality of the § 3142(g) factors weigh in favor of detention. Accordingly, in view of the record before this Court, we find that the Government has shown with clear and convincing evidence that no set of conditions would ensure the safety of the community if Defendant Gallardo-Álvarez is released. *See United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990). Similarly, the Court finds that the Government has established by a preponderance of the evidence that no condition or combination of conditions will ensure Defendant Gallardo-Álvarez' appearance if released. So after having established that Defendant Gallardo-Álvarez poses a serious risk of flight pursuant to § 3142 (f)(2)(A) and serious risk of obstruction of justice and/or witness intimidation pursuant to

§ 3142(f)(2)(B), the Court determines that detention is warranted due to both risk of nonappearance and dangerousness.

### III. Conclusion

In light of the above, Defendant Gallardo-Álvarez shall remain detained without bail pending trial.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of June 2022.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE